# United States District Court

## for the
### Western District of New York

FILED

JAN 0 9 2018

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

United States of America

v.

**NANA DWOMAH YEBOAH**
*Defendant*

Case No. 18-MJ- 5011

## CRIMINAL COMPLAINT

I, <u>JOSE A. GARCIA, Special Agent with the United States Customs and Border Protection,</u> the complainant in this case, state that the following is true to the best of my knowledge and belief:

On December 24, 2017, in the Western District of New York, the defendant **NANA DWOMAH YEBOAH** violated <u>18</u> U.S.C. § <u>111(a)(1)</u> and <u>21</u> U.S.C. § <u>841(a)(1) and 841(b)(1)(D)</u>, offenses described as follows:

The defendant did knowingly forcibly assault, resist, oppose, impede, intimidate, and interfere with United States Customs and Border Patrol Officers, who were engaged in the performance of official duties, and did subject the officers to physical contact, thereby inflicting physical injury on one of the officers in violation of 18 U.S.C. § 111(a)(1). In addition, the defendant did knowingly, intentionally and unlawfully possess with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(D).

**SEE ATTACHED AFFIDAVIT OF JOSE A. GARCIA, S.A., C.B.P.**

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

_____
*Complainant's signature*

JOSE A. GARCIA, S.A. U.S. C.B.P.
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ January **9** , 2018

_____
*Judge's signature*

City and State: <u>Rochester, New York</u>

JONATHAN W. FELDMAN, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK  )
COUNTY OF MONROE  )    SS:
CITY OF ROCHESTER  )

**I, JOSE A. GARCIA**, being duly sworn, depose and state that:

1.    I am a senior Special Agent with the United States Customs and Border Protection (CBP) Office of Professional Responsibility (OPR) and have been employed as a Special Agent for over 25 years. As a member of CBP, I investigate crimes against the United States involving firearms, controlled substances, and immigration violations. During my career, I have also participated in investigations involving a wide variety of state and local criminal violations.

2.    I make this affidavit in support of a criminal complaint charging the defendant, Nana Dwomah YEBOAH, with violating Title 18, United States Code, Section 111(a)(1) (assaulting, resisting, or impeding an officer of the United States) and Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D) (possession of marijuana with intent to distribute). As is set forth in more detail below, YEBOAH did knowingly forcibly assault, resist, oppose, impede, intimidate, and interfere with United States Customs and Border Patrol Officers, who were engaged in the performance of official duties, and did subject the officers to physical contact, thereby inflicting physical injury on one of the officers in violation of 18 U.S.C. § 111(a)(1). In addition, YEBOAH did knowingly, intentionally and unlawfully possess with

intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(D).

3.     The statements in this affidavit are based upon information provided to me by other CBP agents, witness interviews, video surveillance collected by CBP, and my personal participation in the investigation of this matter.  Because this affidavit is being submitted for the limited purpose of obtaining a criminal complaint, I have not included each and every fact known to me.  I have set forth only the facts that I believe are necessary to establish probable cause that the defendant violated the above-referenced statutes.

4.     On December 24, 2017, at approximately 7:45 AM, United States Border Patrol Agents Eric Klein and Michael Brongo were assigned transportation check duties at the Greyhound/Trailways Bus Station located at 186 Cumberland St., Rochester, New York. While inside the bus station, Agent Brongo observed a subject, later identified as Nana Dwomah YEBOAH, walk across the lobby to a vending machine area located by several red benches. At that time, YEBOAH was wearing a backpack, headphones, and a distinctive multi-colored scarf tied around his hair.  Upon making his way across the lobby, YEBOAH turned in Agent Brongo's direction, made eye contact, and nodded his head to Agent Brongo. He then proceeded to place a blue cardboard shoebox, wrapped with gray duct tape, on one of the benches near the vending machines.  After placing the box on the bench, YEBOAH turned to the vending machine at which point Agent Brongo turned his attention away from YEBOAH.

5.     A few moments later, the Agents were alerted by another person that a box had been left unattended on the same bench where Agent Brongo observed YEBOAH.  The

2

Agents went to the bench and observed the previously described shoebox sealed with duct tape. Announcements were made throughout the building to determine whether someone had forgotten the shoebox. When no one replied or claimed ownership, Agents Brongo and Klein considered it to be abandoned and opened it to determine that there was no immediate danger to public safety. Inside the shoebox was a box of plastic bags and a quantity of a green leafy substance that, based on the Agents' training and experience, appeared to be marijuana.

6.      As the Agents were examining the contents of the shoebox, YEBOAH came back to the area and began to frantically look through a garbage can. When asked, YEBOAH denied ownership of the shoebox. Based on Agent Brongo's previous observation of YEBOAH with the shoebox, the Agents asked YEBOAH how he got to the bus station and where he was from. YEBOAH replied that he had taken a Lyft (ride sharing) and that he was from Africa. YEBOAH stated that he could not provide any identification or validation of his immigration status. At that point, Agent Klein told YEBOAH that CBP needed to determine his immigration status and YEBOAH was instructed to sit on a bench.

7.      While talking with the Agents, YEBOAH's behavior became erratic. YEBOAH kept inserting and removing his hands from his pockets and standing up after being instructed to remain seated and to keep his hands visible. In addition, YEBOAH'S demeanor rapidly changed from calm to distraught, and back to calm. Agent Klein briefly left the building in order to retrieve a GRABBA field tool to positively identify YEBOAH's identity and immigration status via his fingerprint. Upon returning to the building, he observed a taxi waiting with the rear passenger door open. Agent Klein spoke with the driver who said he

3

was waiting for a passenger and provided a description that matched YEBOAH. The driver further indicated that a bag in the back seat of the taxi belonged to YEBOAH.

8.      While Agent Klein was outside, YEBOAH admitted to Agent Brongo that the shoebox containing the marijuana belonged to YEBOAH. Upon his return, Agent Klein asked YEBOAH about the backpack in the taxi, at which point YEBOAH became extremely upset and said that he did not know anything about a taxi and the backpack was not his.

9.      At that point, YEBOAH became more erratic. He repeatedly ignored the Agents' instruction to keep his hands out of his pockets and remain seated. Due to YEBOAH's behavior, the discovery of marijuana in the shoebox, and his unknown immigration status, the Agents instructed YEBOAH to stand up and put his hands behind his back in order to be handcuffed. YEBOAH proceeded to physically resist both Agents Brongo and Klein, broke the Agents' hold and ran out of the station door towards Central Avenue. After a short foot pursuit, the Agents caught YEBOAH, who continued to physically resist by wrestling, flailing his arms and legs, and attempting to strike the Agents. At one point, YEBOAH flipped Agent Brongo over his shoulders causing Agent Brongo to land flat on his back in the street. YEBOAH continued to grapple with the Agents for several minutes despite constant commands to stop fighting. At one point, two civilians intervened to assist the Agents. Agent Klein deployed an Electronic Control Weapon (ECW) on two occasions, however, YEBOAH continued to fight before Agents could gain control of him. During the struggle, YEBOAH injured Agent Brongo's face. Agent Brongo was transported to Rochester General Hospital where he was diagnosed with a fractured/broken nose, which may require a future procedure to restore it to its proper position.

4

10.     Following the struggle, the taxi driver that Agent Klein had spoken with brought YEBOAH'S backpack to the Agents.  At that point, Agent Nicholas Corbett, who had responded to assist, secured the backpack in the back of Agent Klein's marked Border Patrol vehicle.  It was thereafter placed in a secure alarmed room at the Rochester Border Patrol Station.

11.     Based on the above, I requested a trained narcotic-detecting canine to respond for examination.  On December 26, 2017, I met CBP Agent Christopher Fahrner and his K-9, "Pistol" at the CBP Facility located in Charlotte, New York.  Pistol performed a drug sniff of the backpack within a processing area, which is approximately 15 feet in length and 4 foot wide. The area contained miscellaneous office equipment, computers, storage boxes, office supplies, chairs, and tables.  The array of items presented to Pistol was intentional.  It consisted of 5 pieces of luggage, 4 of which were known not to contain narcotics, and one of which was the Subject Item.  The parcels were placed in a line in the room along the wall, in no particular order.

12.     Agent Fahrner let Pistol perform a directed K-9 sniff on leash.  Pistol sniffed the entire room, and, according to Agent Fahrner, "Pistol" alerted only to the defendant's backpack. According to Agent Fahrner, the dog sniff of the backpack resulted in a positive alert, indicating that "Pistol" detected the odor of a controlled substance that he has been trained to detect. See, affidavit of CBP Agent Christopher Fahrner, incorporated as part of this affidavit.

13.     Based on the above, a search warrant for the backpack was authorized by Hon. Marian W. Payson, United States Magistrate Judge, on December 28, 2017.  That same day, the backpack was searched at the Rochester Border Patrol Station.  Within the backpack, Agents located a significant amount of suspected marijuana sealed within 5 separate vacuum sealed

bags.  Agent Chris Fahrner conducted a field test of the contents of the bags and received a positive result for the presence of marijuana.  Agents weighed the bags and determined that they each contained 1 pound of marijuana, for a total of 5 pounds.

14.     I have received training in narcotics trafficking, interdiction, money laundering and asset forfeiture investigations.  I have experience in the investigation of violations of federal and state narcotics laws.  I have conducted and participated in numerous narcotics investigations resulting in the arrest and conviction of drug distributors, and the seizure of quantities of controlled substances.  During these investigations my participation has included, but has not been limited to, undercover operations; direction of confidential sources; debriefing of defendants and others involved in the distribution and consumption of illegal drugs; and the execution of search warrants and arrest warrants.  I am familiar with the habits, methods, routines, practices and procedures commonly employed by persons engaged in drug trafficking. I have had the opportunity to speak with and observe other federal and state drug law enforcement officers with regard to the manner in which controlled substances are obtained, diluted, packaged, distributed, sold and used within the framework of drug trafficking in the Western District of New York and elsewhere.  I am also familiar with methods employed by drug traffickers to carry out the delivery and receipt of illicit drugs and related cash proceeds. Based on my training, education, and experience, the marijuana found in YEBOAH'S backpack is indicative of involvement in the distribution of controlled substances.  The packaging of the marijuana is consistent with packaging for distribution.  In addition, based on my training and experience, the weight of the marijuana (5 lbs.) exceeds an amount associated with personal use, and is consistent with possession with the intent to distribute.

6

## CONCLUSION

15.     Based upon the foregoing, your affiant respectfully submits that there is probable cause to believe that the defendant, Nana Dwomah YEBOAH, did violate Title 18, United States Code, Section 111(a)(1) (assaulting, resisting, or impeding an officer of the United States) and Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(D) (possession of marijuana with intent to distribute).

JOSE A. GARCIA
Special Agent
Customs and Border Patrol

Sworn to and subscribed before me
this  9  day of January, 2018.

JONATHAN W. FELDMAN
United States Magistrate Judge

7



**U.S. Customs and Border Protection**
Office of Professional Responsibility
Investigative Operations Division
Buffalo Field Office

AGENTS AFFIDAVIT
FOR OFFICIAL USE ONLY NOT FOR PUBLIC DISCLOSURE

1
2  COUNTY OF MONROE
3
4  STATE OF NEW YORK
5
6  I, Christopher Fahrner do hereby depose and say:
7
8  My full legal name is Christopher Fahrner.  I am currently employed by U.S. Customs
9  and Border Protection (CBP) as a Border Patrol Agent canine handler assigned to the
10  Rochester Border Patrol Office 171 Pattonwood Dr. Irondequoit, New York.
11
12  I am currently assigned as a canine handler with my canine partner Pistol (170355). I
13  completed my seven weeks of training in September of 2017 at the Canine Center Front
14  Royal in Front Royal, VA.
15
16  On September 12, 2017, I was certified by the CBP Canine Program with my canine
17  partner Pistol (170355), as a detection canine team. The certification is a comprehensive
18  test designed to measure the ability of the dog and the handler in searching for, and
19  indicating the presence of, concealed humans and controlled substances. This
20  certification is administered in different environments, with a variety of distractions and
21  is designed to duplicate actual field conditions which may be encountered by the canine
22  team. The certification is valid for one year and certifies the team in the detection of
23  concealed humans, and the odors of cocaine and its derivatives, marijuana and its
24  derivatives, heroin and its derivatives, methamphetamine and its derivatives, and ecstasy.
25  Pistol (170355) and I are required to train twice a month in searching for, and the
26  indication of the presence of concealed humans and controlled substances.
27
28  On Tuesday, December 26, 2017, I received a call from Supervisory Border Patrol Agent
29  Michael Simons asking me to return to the Rochester, New York Border Patrol Station.
30  Upon returning to the station, I was asked by CBP, Office of Professional Responsibility
31  (OPR) Special Agent Jose Garcia to assist him with a canine sniff of a suspicious bag.
32  At approximately 9:45 A.M., I arrived at the Border Patrol station. Special Agent Garcia
33  had already lined up the suspicious bag, along with several other bags similar in size and
34  shape. I then conducted a canine sniff of all the bags and canine Pistol (170355) alerted to
35  a green backpack. Special Agent Garcia then sealed the green backpack in a garbage bag,
36  and placed the backpack in the designated secure evidence area inside the Rochester
37  Border Patrol Station's locked armory.
38
39

Affiants initials

40    The contents of this affidavit are true and correct to the best of my knowledge and belief.
41
42    Christopher Fahrner
43
44
45
46    Signature of Affiant
47
48    Subscribed and sworn to before me this 27th day of December, 2017, in Buffalo, NY at
49    1330 hours.
50
51    Jose Garcia
52    Print Name
53
54
55
56    Signature                          Date

FOR OFFICIAL USE ONLY NOT FOR PUBLIC DISCLOSURE
Page 2 of 2

Affiants initials